IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

MAX L. ARY,

        Defendant.

Case No. 05-10053-01-JTM

## MEMORANDUM AND ORDER

This matter comes before the court on defendant's several motions, including: 1) Motion to Dismiss Counts 5, 9, & 14 on the Grounds of Multiplicity (Dkt. No. 31); 2) Motion to Dismiss Mail and Wire Fraud Counts of the Superseding Indictment, or Alternatively, to Strike Specified Paragraphs as Surplusage (Dkt. No. 47); 3) Motion for Subpoena Duces Tecum (Dkt. No. 33); and 4) Motion to Compel Disclosure and Discovery (Dkt. No. 54).

## I. MOTION TO DISMISS COUNTS 5, 9, & 14 ON GROUNDS OF MULTIPLICITY

Defendant's motion raises the issue of whether certain counts of the Superseding Indictment should be dismissed on the grounds of multiplicity. Defendant argues that Counts 5, 9, and 14 state essentially the same claim as Counts 4, 8 and 13. The government responds that the allegedly offending counts are not multiplicious because they merely state an alternative theory to the traditional theories of mail and wire fraud. The court is in agreement with the government.

Count 4 of the Superseding Indictment charges a violation of 18 U.S.C. § 1341 and alleges that on or about June 19, 2000, through June 28, 2000, the defendant used a mailing in furtherance of a scheme or artifice to:  1) defraud another of money; or 2) obtain money by false and fraudulent pretenses, representations or promises.  Count 5 concerns the same mailing and differs from Count 4 only in that it also alleges that the scheme to defraud was for the purpose of depriving the defendant's employer of the intangible right of his honest services in violation of 18 U.S.C. § 1346.

Count 8 of the Superseding Indictment alleges that on or about October 10, 2000, the defendant used a mailing in furtherance of a scheme or artifice to:  1) defraud another of money or property; or 2) obtain money by false and fraudulent pretenses, representations or promises. Count 9 concerns the same mailing and differs from Count 8 only in that it also alleges that the scheme to defraud was for the purpose of depriving the defendant's employer of the intangible right of his honest services in violation of 18 U.S.C. § 1346.

Count 13 of the Superseding Indictment alleges that on or about February 28, 2001, the defendant used a wire communication in furtherance of a scheme or artifice to:  1) defraud another of money or property; or 2) obtain money by false and fraudulent pretenses, representations or promises.  Count 14 concerns the same wire communication, and differs only in that it charges a theft for honest services in violation of 18 U.S.C. § 1346.

To bring a claim under § 1346, the government must prove that defendant used a mail or wire communication in furtherance of a scheme or artifice to defraud another of the intangible right of honest services.

The government has considerable discretion in how it presents the counts of the

indictment.  U.S. v. Batchelder, 442 U.S. 114, 124 (1979) (citations omitted).  For the sake of clarity, the government chose to separate its mail and fraud claims from its claims of deprivation of honest services.  The government has been clear that the charges in Counts 4, 8 and 13 are directly related to the charges in Counts 5, 9 and 14, respectively.  It has not sought to conceal this information.  Choosing to allege the different theories in different counts does not render the charges multiplicitious.  United States v. Welch, 327 F.3d 1081, 1107 n. 26 (10th Cir. 2003) (noting that alternative theories remained viable, subject to proof at trial).  Defendant cites no case or statute that requires the government to charge alternate theories in the same count.  If the defendant fears that alleging the theories in separate counts will be prejudicial to him, then he may seek to consolidate the counts in the jury instructions.  However, this is not mandatory.  At present, the court finds that all theories of criminal conduct should be submitted to the jury for its determination so long as there exists admissible evidence to support each theory.

Accordingly, the court denies defendant's motion to dismiss Counts 5, 9 and 14.

## II. MOTION TO DISMISS MAIL AND WIRE FRAUD COUNT, OR ALTERNATIVELY TO STRIKE SURPLUSAGE

Defendant argues that Counts 5, 9 & 14 are multiplicious and void for vagueness.  In the alternative, defendant argues that the court should strike certain paragraphs of the Superseding Indictment on the grounds of surplusage.  The government argues that while the defense characterizes its motion as a challenge to the sufficiency of the indictment, it is in fact a challenge to the sufficiency of the evidence.  The court is in agreement with the government.

Fed. R. Crim. P. 7(d) states that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  "This rule introduces a

means of protecting the defendant against immaterial or irrelevant allegations in an indictment or

information, which may, however, be prejudicial." United States v. Smith, 941 F. Supp. 985,

991-92 (D. Kan. 1996) (quoting Notes of Advisory Committee on Rules, 1944 Adoption, Note to

Subdivision [d]). "It is held that a motion to strike surplusage should be granted only if it is clear

that the allegations are not relevant to the charge and are inflammatory and prejudicial." Id.

(quoting 1 Charles A. Wright, Federal Practice and Procedure §127 [1982]).  See also United

States v. Collins, 920 F.2d 619, 631 (10th Cir. 1990).  It is an exacting standard, and its

application is left to the sound discretion of the court.  Smith, 941 F. Supp. at 992.

The court has previously reviewed the Superseding Indictment and found that it was

sufficient on its face.  It is neither multiplicious nor void for vagueness.  Further, when defendant

requested a bill of particulars, the government offered to explain any unclear charges.  At this

point, the parties should be sufficiently aware of the charges in the indictment.  The court finds

that it is unnecessary to strike any part of the Superseding Indictment.  Presently, the court will

refrain from determining whether the facts support a conviction before a trial has been held.

Defendant will have ample opportunity to cross-examine and uncover any weaknesses in the

government's case.

For the reasons discussed in the prior section and here, the court denies defendant's

motion to dismiss or alternatively to strike surplusage.

## III. MOTION FOR SUBPOENA DUCES TECUM SEEKING PRETRIAL PRODUCTION OF DOCUMENTS

Defendant argues that he is entitled to the issuance of a subpoena duces tecum compelling

the pretrial production of documents pursuant to Fed. R Crim. P. 17(c).  The government argues

that defendant has failed to satisfy the requirements of Rule 17(c) subpoena as set forth in <u>United States v. Nixon</u>, 418 U.S. 683 (1974).  In his reply, defendant attempts to narrow his requests, admitting that certain documents had already been provided.  After reviewing the parties' argument, the court finds that the requirements of Rule 17 are not satisfied for the production of documents.  Moreover, defendant's lack of specificity in his original motion is sufficient to bar further consideration.

Fed. R. Crim P. 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).  A subpoena for documents pursuant to Rule 17(c) is not "intended to provide a means of discovery for criminal cases." <u>Nixon</u>, 418 U.S. at 698-99.  "'In other words, Rule 17(c) is not a discovery tool but offers compulsory process for securing specific, identifiable evidence for trial.'" <u>United States v. King</u>, 164 F.R.D. 542, 545 (D. Kan. 1996) (quoting <u>United States v. Jackson</u>, 155 F.R.D. 664, 667 (D. Kan. 1994)).

In <u>Nixon</u>, the Supreme Court established a four part test that a trial court must evaluate before requiring pretrial production of documents with a Rule 17(c) subpoena. Under this test, the defendant must prove:

> 1) that the documents are evidentiary and relevant;
> 2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;
> 3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and
> 4) that the application is made in good faith and is not intended as a general "fishing

expedition.

Nixon, 418 U.S. at 699-700.  The Nixon requirements have been characterized as the "three

hurdles" of relevancy, admissibility and specificity.  Id. at 700.

In determining whether the relevancy and admissibility prongs have been satisfied,

the courts have stated that the requested material cannot be "potentially" relevant or

admissible.  United States v. Anderson, 31 F. Supp. 2d 933, 944 (D. Kan. 1998).  See also

King, 164 F.R.D. at 545 (citing United States v. Burger, 773 F. Supp. 1419, 1425 (D. Kan.

1991), conviction aff'd. but remanded for re-sentencing, 964 F.2d 1065 (10th Cir. 1992)).  The

requested material must meet the tests of relevancy and admissibility at the time they are sought.

Id.  "There must be a 'sufficient likelihood' that the requested material is 'relevant to the offenses

charged in the indictment,' and a 'sufficient preliminary showing that ...[the requested material]

contains evidence admissible with respect to the offenses charged.'"  Anderson, 31 F. Supp. 2d at

944 (quoting Nixon, 418 U.S. at 700).  "Conclusory allegations of relevance and admissibility are

insufficient."  Id. at 944-945.  See also United States v. Eden, 659 F.2d 1376, 1381 (9th Cir.

1981).

The courts have noted that the "specificity" requirement is the most difficult to overcome.

Anderson, 31 F. Supp. 2d at 945.  See also King, 164 F.R.D. at 545; Jackson, 155 F.R.D. at 667.

This requirement ensures that Rule 17(c) subpoenas are used only to secure specific documents

or sharply defined groups of documents for the trial.  Anderson, 31 F. Supp. 2d at 945.  This

requirement prevents the defendant from using the subpoena as a "fishing expedition to see what

may turn up."  Id.  See also Bowman Dairy Co. v. United States, 341 U.S. 214, 221 (1951); King,

164 F.R.D. at 545.  After all, if the defendant cannot reasonably describe the information

6

contained in the requested materials, but merely hopes that something beneficial will turn up, this is a sign that the Rule 17(c) subpoena is being misused.  Jackson, 155 F.R.D. at 667. "One of the major purposes of the specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility."  Anderson, 31 F.Supp.2d at 945.

With his motion, defendant attached the subpoena sent to the Kansas Cosmosphere and Space Center, claiming he had not received the listed documents.  The government responded that defendant's extensive list is broad and violates the standards set forth in Nixon.  The court is in agreement with the government.  Defendant's motion is confusing.  The subpoena includes an attachment stating "this subpoena is not intended to compel production of any documents or objects previously produced to counsel for the defendant pursuant to requests made under the authority of the Kansas Open Records Act or provided to the United States in connection with this case."  Yet, defendant's motion does not state which of the items in the list may have already been received from the United States or through KORA.  Rather, it provides the full list yet again.  Clearly, this does not meet the standards set out in Nixon because defendant has not elaborated on the relevance of the documents or identified with specificity what documents he needs.

Realizing his error, defendant attempts to narrow his list by now requesting the following:

> 1. Corporate records of the Kansas Cosmosphere and KCSC Space Center, Inc., as follows:
>> a. The Articles of Incorporation of the Kansas Cosmosphere referenced in paragraphs 3 and 4 of the Superseding Indictment
>> b. The Articles of Incorporation and By-Laws of KCSC Space Works, Inc. a wholly owned subsidiary;
>> c. Minutes of directors' meetings of the Cosmosphere for May, 2002.

2. Documentation, provenance, or other records establishing KCSC ownership with respect to any of the items referenced in Exhibit A [Dkt. No. 33, Exhibit 2 at p. 5].

3. A current computer inventory of the artifact collection of the KCSC.

4. The inventory of all items which the KCSC claims is missing as alleged in paragraph 82 of the Superseding Indictment and all documents relied on by the Cosmosphere to determine that items were sold at auction by the defendant.

5. All correspondence and emails in the KCSC files which reference sale of items at Superior Auction in 1999-2001.

6. Any records of Omega watches or Omega watch mock-ups obtained by the KCSC from NASA or Omega and record relating to any sales, loans or gifts of such watches made by the KCSC through the current date.

7. The record[s] maintained by KCSC of donors showing contributions made to the KCSC by Max L. or Jan Ary during his employment.

Defendant's Reply, Dkt. No. 65 at pp. 1-5. Defendant's delay in specifying his arguments is a sufficient basis to deny his motion. Even considering his belated arguments, the court does not find that defendant is entitled to these documents. As for item 1, the court finds that the government has no obligation to provide the listed information because defendant's request does not comport with the standards set out in Rule 17 and Nixon. Furthermore, the government has already indicated it has disclosed the relevant documents, and defendant may be able to find some of these items in the public record. As for items 2-7, the court finds that Mr. Ary is attempting to use Rule 17 as a tool for discovery. This is clearly a criminal case where civil discovery is not permitted. While courts require the government to provide exculpatory evidence, they do not require prosecutors to provide such exhaustive documentation. Nixon, 418 U.S. at 699 (noting that a subpoena for documents may be quashed if it would be unreasonable or oppressive). As a result, the court denies defendant's motion.

## IV. MOTION TO COMPEL DISCLOSURE AND DISCOVERY

Defendant asks this court to compel the government to disclose witness statements as

Brady material. Specifically, defendant requests production of the following: 1) witness statements; 2) any promises or grants of immunity offered to witnesses during the investigation of this case; 3) an exhaustive list of documents from the administrative, non-investigatory side of NASA; and 4) sentiments from the defendant's friends concerning his credibility. The government responds that it has already disclosed a considerable amount of information and that this motion requires no hearing because defendant has not met his burden.

## A. STANDARD OF REVIEW

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court ruled that prosecutorial suppression of evidence favorable to an accused, upon request for disclosure by the accused, violates due process when the evidence is material to the guilt or punishment of the accused, irrespective of the good faith or bad faith of the prosecution. The failure to disclose material favorable evidence violates due process even when the defendant makes no request for the material. United States v. Agurs, 427 U.S. 97 (1976).

The Brady Rule does not require the government to produce all evidence in the government's possession which might conceivably assist the preparation of his defense, but assures that the defendant will not be denied access to exculpatory evidence known only to the government. United States v. Shoher, 555 F. Supp. 346, 352-54 (S.D.N.Y. 1983) (citations omitted). As the case law has repeatedly explained, "[Brady] does not create any pre-trial discovery privileges not contained in the Federal Rules of Criminal Procedure." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976). See also United States v. Bonnett, 877 F.2d 1450, 1459 (10th Cir. 1989). Rather, "[Brady] only requires that the government supply a defendant with exculpatory information of which it is aware." Flores, 540 F.2d at 438. It does not require

that the defendant be given unsupervised authority to search through the government's files.

Kyles v. Whitley, 514 U.S. 419, 437 (1995) (Brady does not mandate open file discovery);

United States v. Bagley, 473 U.S. 667, 675 (1985).  Furthermore, the Constitution does not

demand that the government disclose or allow complete discovery of everything that might

influence a jury.  Agurs, 427 U.S. at 109.  See also United States v. Cadet, 727 F.2d 1453, 1467

(9th Cir. 1984).  Instead, the government "need only disclose information favorable to the

defense that meets the appropriate standard of materiality."  Cadet, 727 F.2d at 1467.

> Evidence is material only if there is a reasonable probability that, [were] the
> evidence [to be] disclosed to the defense, the result of the proceeding would [be]
> different. A 'reasonable probability' is a probability sufficient to undermine
> confidence in the outcome.

Ritchie, 480 U.S. at 57 (quoting Bagley, 473 U.S. at 682).  Thus, although Brady obliges the

government to turn over evidence in its possession that is both favorable to the defendant and

material to his guilt or punishment, Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987), it does not

obligate the government "to provide defense counsel with unlimited discovery of everything

known by the prosecutor." Agurs, 427 U.S. at 106.  Nor is the government required to facilitate

the compilation of exculpatory material that, with some industry, defense counsel could marshal

on his own.  Shoher, 555 F. Supp. at 352.

Moreover, it is only expressly and obviously exculpatory material the government

need disclose under Brady.  The Tenth Circuit limits Brady as follows:

> The Government has no obligation to disclose possible theories of the defense to a
> defendant. If a statement does not contain any expressly exculpatory material, the
> Government need not produce that statement to the defense. To hold otherwise
> would impose an insuperable burden on the Government to determine what
> facially non-exculpatory evidence might possibly be favorable to the accused by
> inferential reasoning. We are confident that the Supreme Court did not intend the

10

[Brady] holding to sweep so broadly.

United States v. Comosona, 848 F.2d 1110, 1115 (10th Cir. 1988).  See also United States

v. Buchanan, 891 F.2d 1436, 1441 (10th Cir. 1989).  With regard to "impeachment" evidence,

Brady does not require the government to provide any information that may impeach a witness'

testimony, but instead requires that the impeachment information, like all Brady information, be

material to the question of a defendant's guilt.  Bagley, 473 U.S. at 676.  See also Buchanan, 891

F.2d at 1443-44.  In other words, the evidence must be substantially impeaching "so that, if

disclosed and used effectively, it may make the difference between conviction and acquittal."

Bagley, 473 U.S. at 676.  See Kyles, 514 U.S. 434 (must put whole case in such a different light

as to undermine confidence in the verdict).  Moreover, if the impeachment evidence is merely

cumulative, or a witness is but a minor part of the government's evidence, Brady does not require

its disclosure.  See, e.g., United States v. Payne, 63 F.3d 1200, 1210-11 (2d Cir. 1995);

Buchanan, 891 F.2d at 1443-44.

        Finally, settled law provides that there is no requirement for the government to

produce information of which a defendant is aware, or which, by the exercise of due

diligence, he can discover.  When the defendant is aware of the existence of potentially

exculpatory evidence and has access to the witnesses or the documents, has the opportunity to

interview the witnesses and review the documents, and is aware of the essential facts that would

enable him to take advantage of the exculpatory evidence, the government has no Brady

obligation with regard to those witnesses or documents.  See, e.g., United States v. White, 970

F.2d 328, 337 (7th Cir. 1992); United States v. Burger, 773 F. Supp. 1419, 1426 (D. Kan. 1991).

As the Seventh Circuit explained: "[e]vidence cannot be regarded as 'suppressed' by the

government when the defendant has access to the evidence before trial by the exercise of reasonable diligence." <u>White</u>, 970 F.2d at 337.

As for witness statements, the Jencks Act provides that defendant may discover statements of a government witness after that witness has testified on direct examination at trial. The court may not compel the government to produce Jencks Act material until after a witness has testified. 18 U.S.C. § 3500(a).  The term "statement" as used in the Jencks Act, means: 1) a written statement made by said witness and signed or otherwise adopted or approved by him; 2) a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or 3) a statement, however taken or recorded, or a transcription, made by said witness to a grand jury.  18 U.S.C. § 3500(e)(1)-(3).

## B. ANALYSIS

In reviewing the parties' briefs, the court does not find oral argument necessary.  Under <u>United States v. Burger</u>, 773 F. Supp. 1419, 1421 (D. Kan. 1991), the defendant has the burden of making a prima facie showing that the government is in possession of information that would be material to the defense.  While the defendant alleges that the United States has not produced <u>Brady</u> material, he fails to identify what material and how it falls within the scope of <u>Brady</u>. Defendant's assertions are not sufficient to warrant a hearing on his motion.

Next, the defendant has not shown he is entitled to the materials he requests.

## 1. Witness Statements

As for the witness statements, the United States is not obligated to produce witness statements until after the witness completes his or her direct examination. The defendant cites no authority to the contrary.  It should also be noted that the defendant treats an agent's

memorandum of interview ("302") as a "witness statement."  The law makes a clear distinction

between the statement of a witness (18 U.S.C. §3500[e]) and an agent's report concerning a

witness interview.  The United States must disclose the "statement" of a witness after that person

testifies, but the government is not required to disclose the agent's report of interview with the

witness.  Thus, the court denies defendant's request for witness statements.

## 2. Promises or Grants of Immunity

The United States asserts that it has not made any promises of benefit or granted

immunity to any person in this investigation and that the agents and  NASA have no authority to

make any such promises or deals.  The Assistant U.S. Attorney General states that to her

knowledge there have been no promises, deals or grants of immunity because such offers were

unnecessary since the investigation only alleges defendant's misconduct.  The court does not find

merit in defendant's assertion that other employees have engaged in criminal conduct since

defendant has not presented evidence to support this.  Regardless, these are theories that

defendant may assert at trial if supported by the evidence.  As a result, the court denies

defendant's request for this information.

## 3. Administrative Documents from NASA

Defendant's request for NASA documents is also without merit. First, these documents

are not in the possession of the United States.  This information, if it exists, is likely to be in the

possession of NASA's administrative side, which has not made any investigatory decisions in

this case or participated in the investigation as anything other than a witness.  Second, the

defendant has stated to government representatives that he does not know how the NASA items

loaned to the Cosmosphere were deaccessed and sold by him at auction.  The defendant stated

that this was inadvertent, in essence an accident, the product of a sloppy curatorial staff at the

Cosmosphere that the defendant identified as his assistant and his wife.  With this as the

defendant's stated defense to the allegations of stealing government property, NASA's lending

practices with other institutions is not exculpatory, material or relevant to the defendant's

defense.  If NASA treated the loan agreements with other institutions with "informality," this

would not exonerate the defendant and is not material to his defense of accident or mistake.

Finally, the defendant wants to know how NASA has resolved other similar criminal

cases.  Defendant's request is improper and immaterial to his defense as it would disclose targets,

evidence, witness identities, etc., which the government has no obligation to reveal. Thus, the

court denies defendant's request.

**4. Sentiments Concerning the Defendant's Trustworthiness**

Defense counsel says that individuals told his investigators they disclosed their

personal sentiments concerning the defendant's credibility to government agents. The

defense alleges that this is <u>Brady</u> and should be disclosed.  First, this is not exculpatory evidence

under the purview of <u>Brady</u>.  Further, the United States is not required to produce this

information because defendant may ascertain this information through reasonable, independent

investigation.  Thus, the court denies defendant's request.

IT IS ACCORDINGLY ORDERED this 27th day of September 2005, that the court denies

defendant's motions (Dkt. Nos. 31, 47, 33, 54).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE