IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

         vs.                        Case No. 05-10053-01-JTM

MAX L. ARY,

          Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on the defendant's Motion to Suppress (Dkt. No. 35). Defendant challenges the legality of the government's seizure of evidence, pursuant to a search warrant issued on December 18, 2003, on three grounds:  1) that the materials seized were pursuant to an illegal search; 2) that the government seized items beyond the scope of the search warrant; and 3) that certain items were seized in violation of the attorney-client privilege and should be suppressed.

**I. BACKGROUND**

On November 7, 2003, defendant represents that he retained Lee Thompson as his attorney.  On November 13, 2003, defense counsel informed the United States Attorney and the Criminal Chief for the District of Kansas that he represented Mr. Ary.

On December 18, 2003, agents with the National Aeronautics and Space Administration (NASA), Office of Inspector General, and the Federal Bureau of Investigation (FBI) executed a

federal search warrant at the home of the defendant and his wife.  Special agent Michael C.

Mataya of the Office of the Inspector General of NASA presented an application and affidavit for

a search warrant to United States Magistrate Judge Bana Roberts of the Western District of

Oklahoma. Judge Roberts, after reviewing it, issued a search warrant authorizing the search of

the defendant's home and the seizure of the items listed in Exhibit B (Dkt. No. 38, Attachments

B, C and D).  Attachment B authorized the agents to seize "[a]rtifacts including those described

in Attachment D that are NASA property as indicated on the loan agreements and authenticated,

or property reported missing by the Kansas Cosmosphere and Space Center."  Attachment D is a

list of five pages of artifacts that the Cosmosphere represented were missing from their collection

without authorization at the time the search warrant was sought by the investigating agents.

During the search of the defendant's home, government agents seized numerous items, including

three computers and numerous documents.

On December 22, 2003, counsel informed the office of the United States Attorney

that "it appears as though the search resulted in the seizure of computers and other files

containing what is clearly attorney-client privileged communications."  Counsel also urged "that

immediate steps be taken to avoid purposeful intrusion by the government into the attorney-client

relationship and communications."  The government notes that defense counsel's letter did not

mention that the black plastic box, seized during the search and listed on the "Receipt for

Property Received Form" might also contain attorney-client communications.

On January 5, 2004, defense counsel informed the office of the United States Attorney of

the following:

> As discussed on the telephone this morning, we believe that included in the

2

material seized in the search of Max Ary's personal residence are privileged attorney-client communications. I am told that a file marked "Lee Thompson" was opened and papers spread out. I don't know if any of those documents were included in the inventoried seized items listed under item 4k, 'Misc. documents on floor.' I would like to inspect those items to determine if any attorney-client communications were included.

In addition, I am informed that a number of confidential communications were included on the Compaq Professional Workstation AP 550, serial number 6032FCM4A070 (item 2k), and were indexed under "My Documents" and a file designation containing my name was included.

See Dkt. No. 41, Exhibit E.  Again, the government notes that defense counsel did not ask to

inspect the black plastic box and did not express any concern that it may contain privileged

attorney-client communications.

On January 28, 2004, Assistant United States Attorney Debra L. Barnett informed

defense counsel that she was returning a CD copy of files from a computer and that:

The file folder with your name on it has been reviewed by a "taint team" in our office. It has been determined that it contains privileged material. This material will not be reviewed or examined by myself as part of this investigation.

With regard to the physical items collected from Mr. Ary's home, the agents informed me that a file with your name on it was left in the home since it was assumed it contained privileged material. However, I have asked for a 'taint team' review of numerous files that are currently in the possession of the FBI. When that review is complete, I will contact you about the conclusions.

See Dkt. No. 42, Exhibit F.  The CD contained files from the Compaq computer which were

indexed, on the computer's hard drive, under the heading "Lee Thompson information" and

which are listed in Exhibit J (Dkt. No. 46).  Defendant alleges that the information so listed

remained on the computer hard drive which was returned to counsel by the government on July

13, 2005.  Ms. Barnett, however, cannot verify this because she has not viewed the CD and the

Compaq computer since they were deemed to contain privileged information.

On February 13, 2004, counsel was present in the office of the United States Attorney. Ms. Barnett informed defense counsel that Criminal Chief Lanny Welch had reviewed items seized from Mr. Ary's residence for privileged content, that he was the "taint team" and that certain items determined to be privileged were being returned and that those items had not been examined by Ms. Barnett or anyone involved in the investigation. Ms. Barnett also indicated that Mr. Welch would review the computers and perform the same review prior to anyone looking at the computers.  Defense counsel states that during this meeting Ms. Barnett returned to counsel a note pad with handwritten notes and two files, one containing handwritten notes and the other containing printed summaries of communications with counsel.  See Dkt. No. 43, Exhibit G. Ms. Barnett states that she has not viewed the items deemed privileged, and thus cannot verify if the items listed in Exhibit G (Dkt. No. 43) were those deemed privileged.

To the best of defense counsel's recollection and based on a review of his files, he received no further communications from the government regarding the identification of privileged communications in items seized during the search of Mr. Ary's home, and he received no additional items deemed privileged.

On May 25, 2005, defense counsel along with his investigator, Hank Gibbons, came to the United States Attorney's office to review Rule 16 discovery materials.  Although defense counsel represents that this was the first time counsel or any representatives for Mr. Ary had the opportunity to review the documents and items seized in the search of Mr. Ary's home, the government points out that the defendant received a list of items seized from his home during the execution of the search warrant at the conclusion of the search.  The Rule 16 materials included the documents that were seized from the defendant's home during the execution of the search

4

warrant on December 18, 2003.

One of the items provided for review, which defendant was allowed to copy, was a container entitled "One black plastic box containing misc. documents."  See Dkt 39, Exhibit C, at p. 1 (listed as "item 6k).  The contents of item 6k, the "black plastic box," included tax returns, calendars, and a number of individual file folders containing numerous summaries and analyses of the items sold at auction and related information pertaining to Mr. Ary's status with the Kansas Cosmosphere.[1]  Defendant contends that most of the contents of the "black plastic box" were privileged documents.  Defense counsel claims that the items marked with an asterisk in Exhibit H (Dkt. No. 44) and the documents listed in Exhibit I (Dkt. No. 45) are privileged.  Again, Ms. Barnett cannot verify whether Exhibit H and Exhibit I list items from the black plastic box because she has not reviewed documents deemed privileged.

The government claims that at no time during the review of the discovery materials on May 25, 2005, did defense counsel caution the United States that the black plastic box seized during the search warrant might contain privileged attorney-client communications.  Further, the government claims that at no time did defense counsel ask to have the contents of the black plastic box segregated from the other materials so that either the taint team or the court could determine whether it contained privileged attorney-client communications.

The government also produced other documents and files in discovery, including a box labeled in copying as Box 2, which contained individual files divided by the names of items sold at auction and referenced in the Superseding Indictment.  Each file in Box 2, which appear to

---

[1] Defense counsel represents that Exhibit H (Dkt. No. 44) is a summary of Mr. Ary's files contained in the black plastic box with a list of the bates numbers of all contents of the files.

have been prepared by investigative agents, also contained copies of printed and handwritten notes seized from Mr. Ary's home in the "black plastic box" (many of which were printed from the contents of the computers which were seized and indexed under headings such as "Lee Thompson Information" or "Court Case"). The privileged items contained in the black plastic box, which also appear in the investigative files (Box 2), are also set out in Exhibit I (Dkt. No. 45). Again, Ms. Barnett cannot verify this information because she has not seen the contents of the black plastic box.

Included in items seized in the subject search were three computers containing items prepared at the request of counsel.[2] Pursuant to a separate agreement between counsel, the FBI returned the actual computers to the defendant on July 13. Defense counsel represents that the government has retained copies of all computer contents. Defendant claims that he has not had an opportunity to re-examine fully the computers since their return and asks that he be allowed to supplement this submission, if necessary.

## II. ANALYSIS

### A. Whether the Search was Illegal

Defendant argues that the search of his home was improper and that all items seized should be suppressed. Specifically, defendant argues that the affidavit misrepresented known facts and informed the magistrate that all artifacts sold in all four actions either belonged to the Cosmosphere or to NASA and that such items had accession numbers. The government responds that the search was proper and that suppression is not warranted. After reviewing the

---

[2] Defense counsel represents that a copy of the indices of files from one of the computers (the Compaq) has been submitted as Exhibit J (Dkt. No. 46), and this shows that the file "Lee Thompson" remained on the computer.

parties' arguments, the court finds in favor of the government.

To challenge the veracity of an affidavit supporting a search warrant, defendant must make a substantial preliminary showing that: 1) the affidavit contained a material false statement or omission; 2) the false statement or omission was made knowingly and intentionally, or with reckless disregard for the truth; and 3) the allegedly false statement or omission is necessary to the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-156 (1978). No Franks hearing is required if the defendant cannot prove the materiality of the allegedly false statements or the allegedly misleading omissions. United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th Cir. 2002). Furthermore, no hearing is necessary if the affidavit is still sufficient for probable cause without the false statement. Franks, 438 U.S. at 171-172.

The court finds defendant's allegation that NASA Special Agent Mike Mataya misrepresented known facts to the magistrate are meritless. Defendant asserts that the affidavit is misleading because it indicates that "all the artifacts sold in all four auctions either belonged to the Cosmosphere or to NASA." Defendant further alleges that similar misstatements are raised in the Superseding Indictment. However, the court does not find this to be the case. The warrant states that "Cosmosphere personnel determined that a number of the missing artifacts were sold at speciality auctions..." Dkt. No. 38, at ¶ 15 (emphasis added). The affidavit goes on to specify the date of the auctions, the number of items sold, the estimated value of these items and the purported ownership of these items. Dkt. No. 38, at ¶ 15. The government reasonably relied on the representation of the Cosmosphere in executing the warrants and did not believe these statements to be materially false. Similarly, the Superseding Indictment specifies the items sold and the government will be required to demonstrate that these were the property of NASA or the

7

Cosmosphere.  As the government asserts, there are a number of ways in which the Cosmosphere catalogued its items, and there may be many reasons why certain items may not appear in the catalogue.  Some items may have been maintained on the premises without an accession number but may be identifiable by staff.  Some items may have been purchased by the Cosmosphere funds but not formally accessioned.  Defense counsel is attempting to try these issues here, which is wholly inappropriate.  If the government does not produce sufficient evidence that the property belonged to someone other than Mr. Ary, then the jury will be able to find for defendant.  It is premature for the court to make such determinations before the trial has commenced.

Finally, the fact that the Superseding Indictment does not charge all artifacts seized does not render the search warrant invalid.  The magistrate authorized the search of Mr. Ary's home based on probable cause.  The search warrant was an investigative tool while the Superseding Indictment provides for the formal charges.  The prosecutor has broad discretion in what it chooses to prosecute and the differences in the seizure and the Superseding Indictment reflect this discretion.  Furthermore, defendant notes that some of the seized items were returned to Mr. Ary on May 25, 2005.  The government's return of these items indicates that it distinguishes items that it had sufficient evidence to allege charges and items that the government determined to be Mr. Ary's.

As a result, the court finds that defendant has not met his burden for a <u>Franks</u> hearing. The statements that defendant cites to do not constitute materially false statements.  Even taking as true defendant's argument, the affidavit taken as whole includes sufficient showing of probable cause. Under these circumstances, the court finds the search was legal and thus suppression of all the evidence is not required.

8

**B. Whether the Government Seized Items Beyond the Scope of the Search Warrant**

Defendant argues that the government seized materials beyond the scope of the search warrant and as a result all items seized should be suppressed.  The government responds that the search warrant was sufficiently particular and suppression is not required.

"[T]he Fourth Amendment mandates that search warrants 'particularly describ[e] the place to be searched and the persons or things to be seized.' "  United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir.1988) (quoting Marron v. United States, 275 U.S. 192, 196 (1927). As a general rule, only evidence seized improperly must be suppressed, unless there was a flagrant disregard for the terms of the warrant.  United States v. $149,442.43 in United States Currency, 965 F.2d 868, 875 (10th Cir. 1992) (quoting United States v. Medlin, 798 F.2d 407, 411 (10th Cir. 1986)).  However, "[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant."  Medlin, 842 F.2d at 1199.

To determine if the items seized were described in the warrant, the court employs a practical test.  United States v. Janus Industries, 48 F.3d 1548, 1554 (10th Cir. 1995).  "When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking."  Janus Industries, 48 F.3d at 1554 (citations omitted).  The inadvertent seizure of items not relevant to criminal activity does not violate the Fourth Amendment, particularly when it would be impractical and intrusive for law enforcement agents to sift through many documents in order to segregate those outside the warrant.  United States v. Hargus, 128 F.3d 1358 (10th

Cir. 1997) <u>citing</u> <u>United States v. Le</u>, 173 F.3d 1258, (10th Cir. 1999) (finding that suppression was not required when officers seized two file cabinets full of documents, of which only a part were covered by the search warrant).  <u>See</u> <u>United States v. Riley</u>, 906 F.2d 841, 845 (2d Cir. 1990) ("[A]llowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.'"); <u>United States v. Henson</u>, 848 F.2d 1374, 1383-84 (6th Cir. 1988) (finding that it is not reasonable to require officer to sift through a large mass of documents and computer files in an effort to segregate those few papers that were outside the warrant).

The search warrant was based on a detailed affidavit presented to a magistrate judge who found probable cause to issue the warrant.  The court finds that the seized items were adequately described in the search warrant.  Considering the number of artifacts listed in the affidavit, law enforcement's seizure of items that may have appeared to be on the affidavit was merely an inadvertent seizure that does not violate the Fourth Amendment.  Further, as a practical matter, on site sorting would have been lengthy and time consuming.  Defendant does not come forth with any specific information attacking the scope of the warrant.  He only argues that since the warrant stated that Cosmosphere items had "unique identifiers," that law enforcement seizure of items without "unique identifiers" was too broad.  However, law enforcement's decision to seize the items resembling the items in the warrant was reasonable under the circumstance as it was possible that the identifiers could have been removed or were never affixed, as previously discussed.  Under these circumstances, the court finds that the government did not exceed the scope of the warrant and the evidence seized should not be suppressed.

**C. Whether Items Seized in Violation of Attorney-Client Privilege and Work Product Privilege Should Be Suppressed**

Defendant asserts that the items seized included documents covered by attorney-client and work product privileges.  Assistant U.S. Attorney Barnett responds that she has not reviewed documents that a taint team reviewed and returned as privileged,  so she cannot respond to the particular allegation that certain privileged documents are part of the investigative file.  However, she argues that defense counsel reviewed the alleged privileged documents and did not assert the privilege at the time of the review.  After reviewing the parties' arguments, the court finds that defendant waived attorney-client privilege or work product privilege as to the documents contained in the black plastic box.

Federal courts recognize the attorney-client and work product privileges as doctrines that serve to protect confidential communications between attorneys and their clients, as well as the mental impressions and legal strategies developed by attorneys in anticipation of litigation.  See Fisher v. United States, 425 U.S. 391, 403 (1976); Upjohn Company v. United States, 449 U.S. 383, 389 (1981); (noting that the attorney-client privilege covers a wide range of communications with a purpose of encouraging "clients to make full disclosure to their attorneys.").  While both privileges are virtually inviolable, this is only true if the proponent of the privilege can establish that the privilege exists in the first instance, and that it has not been waived.  See United States v. Bump, 605 F.2d 548, 551 (10th Cir. 1979).

To determine the existence of either an attorney-client or work product privilege, the court focuses on whether the client who communicates the information or the attorney who creates the work product has a "justifiable expectation" that the information will remain secret.

11

In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007, 1015-16 (1st Cir. 1988).  A waiver can be express or implied by conduct.  "Implied waiver occurs when a party claiming the privilege has <u>voluntarily</u> disclosed confidential information on a given subject matter <u>to a party not covered by the privilege</u>."  Hanson v. U.S. Agency for International Development, 372 F.3d 286, 293-94 (4th Cir. 2004).  A client waives the privilege "by deliberately injecting into the case the advice which he received from his attorney." Smith v. Alyeska Pipeline Service Co., 538 F. Supp. 977, 979 (D. Del. 1982).

Materials may be covered under both the attorney-client privilege and work product doctrine.  Upjohn Company v. United States, 499 U.S. at 398.  Thus documents prepared with the purpose of being sent to counsel for legal advice, legal opinions, legal services, or assistance in a legal proceeding are held to be privileged.  In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed. Cir. 2000).

In the letter dated January 5, 2004, defense counsel had notified the government of the possibility of privileged documents being seized under the search warrant.  Counsel represented that a file folder, some computer files and miscellaneous documents on the floor may contain confidential information. A taint team reviewed these items and returned those deemed privileged.  For the following year and a half, there was no communication about any other privileged documents.

On May 25, 2005, the parties met to review Rule 16 discovery material.  At this time, defense counsel had an opportunity to review items in one black plastic box.  Counsel did not assert any claim of privilege during or immediately after his review of these documents.  On July 15, 2005, defendant brought this motion to suppress asserting that the documents in the black

plastic box were privileged.

Defendant's assertion of privilege raises several troubling issues.  Clearly, when documents are secured through the execution of a search warrant, the production cannot be said to be voluntary.  See Transamerica Computer v. International Business Machines, 573 F.2d 646, 651 (9th Cir.1978).  During the hearing, the court received the documents contained in the black plastic box.  The vast majority of these documents are records that would be viewed by third parties and thus not protected under attorney-client privilege.  As for defendant's notations and assembly of these items, there may be an issue of work-product privilege.  However, since counsel did not raise this issue when he first viewed these documents, the court finds that the privilege has been waived.  Although defense counsel initially asserted his claims of privilege in a letter to the government about specific files, he raised no further objection for more than a year and a half.  Despite his present claim of privilege, counsel did not assert the privilege during his review of the content of the black plastic box in May 2005.  If it was obvious that these items were privileged, then one would presume that counsel would have raised this issue in the Rule 16 discovery review.  It was not until more than a month later in which counsel raised this issue.  While the court may have been willing to accept a claim of privilege asserted during his review of the contents of the black plastic box, now it appears that counsel has delayed too long.  U.S. v. de la Jara, 973 F.2d 746, 750 (9th Cir. 1992) (noting that the privilege will be waived "if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.").  Since the privileged items listed in Exhibit I (Dkt. No. 45) are derived from the black plastic box, any waiver of privilege applied to the black plastic box applies also to Box 2.  Thus, the court finds that defendant has waived his claim of privilege.

Defense counsel also asks the court for additional time to supplement his motion because he did not have a chance to review the laptops returned on July 13.  More than two months have passed since defendant's motion, and counsel has not submitted any supplemental information. Thus, the supplementation issue is now moot.

IT IS ACCORDINGLY ORDERED this 27th day of September 2005, that the court denies defendant's Motion to Suppress (Dkt. No. 35).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

14