IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

           vs.                       Case No. 05-10053-01-JTM

MAX L. ARY,

           Defendant.

## MEMORANDUM AND ORDER

      This matter comes before the court on the defendant's Motion for Judgment of Acquittal or New Trial pursuant to Fed.R.Crim.P. 29 and Fed.R.Crim.P. 33.

## I. BACKGROUND

      The grand jury returned a 19-count Superseding Indictment against defendant Max L. Ary.  Counts 1, 13 and 14 charged wire fraud in violation of 18 U.S.C. § 1343; Counts 2, 4, 5, 8 and 9 charged mail fraud in violation of 18 U.S.C. § 1341; Counts 3 and 12 charged theft of government property in violation of 18 U.S.C. § 641; Counts 6, 10, 15 and 17 charged interstate transportation of stolen goods in violation of 18 U.S.C. § 2314; and Counts 7, 11 and 16 charged money laundering in violation of 18 U.S.C. § 1957.  Counts 18 and 19 related to criminal forfeiture in violation of 18 U.S.C. § 982.

      Mr. Ary's jury trial began on October 18, 2005.  On November 1, 2005, the jury found Mr. Ary guilty on counts 1-4, 8, 10-13, and 15-17.  He was acquitted on Counts 6 and 7.  The

jury did not determine defendant's guilt on the alternative theory of honest services of fraud alleged in Counts 5, 9 and 14.

The court then instructed the jury on forfeiture.  On November 1, 2005, the jury returned a verdict of forfeiture in the following amounts:  $396 on Counts 1 and 2; $1,980 on Counts 3 and 4; $13,150 on Counts 8 and 10; $36,485 on Count 11; $37,625 on Counts 12, 13, and 15; and $34,504 on Count 16.

## II. JUDGMENT OF ACQUITTAL

### A. Standard of Review

Federal Rule of Criminal Procedure 29(c)(2) allows the court to set aside a guilty verdict and enter an acquittal.  When considering a motion for judgment of acquittal based on the sufficiency of evidence, the court views the evidence in the light most favorable to the government.  United States v. Dunmire, 403 F.3d 722, 724 (10th Cir. 2005).  The court should not weigh conflicting evidence or second-guess the fact-finding decisions of the jury.  Van Nattan v. United States, 357 F.2d 161, 162 (10th Cir. 1966).  Rather, the court's role is limited to determining "whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom."  United States v. Smith, 133 F.3d 737, 741-42 (10th Cir. 1997).  Viewing the evidence in its entirety, a conviction must be grounded on more than a suspicion of guilt.  United States v. Fox, 902 F.2d 1508, 1513 (10th Cir. 1990).  A conviction cannot be sustained if obtained by "piling inference on inference."  Dunmire, 403 F.3d at 724 (quoting United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995)).  "Evidence supporting the conviction must be substantial; that is, it must raise more than a mere suspicion of guilt."  United States v. Troutman,

814 F.2d 1428 (10th Cir. 1987).  A conviction will be upheld where "[c]ircumstantial evidence, taken together with any reasonable inferences which flow from such evidence, is sufficient to establish guilt beyond a reasonable doubt."  United States v. Lazcano-Villalobos, 175 F.3d 838, 843 n.2 (10th Cir. 1999) (quotations and citations omitted).

**B. Analysis**

Defendant raises several issues in his motion for judgment of acquittal on the grounds of insufficient evidence to support his conviction. Defendant argues that the government failed to introduce sufficient evidence from which a jury might find Mr. Ary guilty beyond a reasonable doubt of the offenses charged in: 1) Counts 1 and 2 relating to the Omega mock-up watch; 2) Counts 3 and 12 relating to theft of government property; 3) Counts 4, 8 and 13 relating to wire or mail fraud; and 4) Count 17 relating to interstate transportation of stolen property.

**1. Counts 1 and 2 Relating to the Omega Mock-up Watch**

Defendant raises several arguments relating to the sufficiency of the evidence as to the mail and wire fraud counts relating to the Omega mock-up watch.

In reviewing the Superseding Indictment, the language of Counts 1 and 2, and the parties' arguments, the court finds that there was sufficient evidence for the jury to return a verdict of guilt beyond a reasonable doubt.  The government alleged that defendant's scheme to defraud or scheme to obtain money by false or fraudulent pretenses or representations involved the use of a NASA mock-up watch loaned to the Cosmosphere.  Defendant loaned the mock-up watch to a space exhibit in the Philippines without NASA authorization or knowledge.  Both the Cosmosphere and the Philippines space exhibit insured the mock-up watch, along with other Cosmosphere property.  When items sent to the Philippines were lost or damaged, defendant

3

submitted an insurance claim to Oriental Assurance Corporation.  Insurance representatives were led to believe the watch was not a mock-up, but an actual Omega watch with a value of $25,000. Based on these representations, the Oriental Assurance Corporation and defendant settled the claim for $55,000. On these facts, with the accompanying trial testimony and documentation, the jury returned a verdict of guilt.

The court finds that there was sufficient evidence for the jury to find that in whole or in part in the state of Kansas, defendant devised a scheme to defraud or obtain money, the defendant acted with specific intent, and the defendant used a wire transfer and a mailing in furtherance of the scheme.  Furthermore, defendant represented to NASA that the mock-up watch was in the Cosmosphere's collection, even though defendant knew it was lost in the Philippines and insurance proceeds had been collected.  While the insurance settlement was for $55,000, the jury assigned only part of this value to the mock-up watch, indicating that jury members were aware that the settlement was not solely for the loss of the watch. The jury found that defendant made material false or fraudulent representations or pretense, or material omission, during the commission of his scheme to defraud.  The language of the relevant statutes permits conviction where defendant caused the mailing and wire transmission. 18 U.S.C. §§1341, 1343.

The court does not find a basis for disturbing the jury verdict.

**2. Counts 3 and 12 Relating to Theft of Government Property**

Defendant next argues that the government did not establish that the DDR Tape and the signal conditioner were, in fact, property belonging to the government. Defendant implies that the government may only prove ownership of property through loan agreements and a specific serial number.  The court does not find this to be the case.

There was sufficient evidence to conclude the DDR tape and signal conditioner belonged to the government. The Cosmosphere's internal inventory records and loan agreements establish that the DDR tape and signal conditioner belonged to the government, not the Cosmosphere or the defendant. Jim Remar testified that the two items were listed in the internal inventory records, even though the items were missing from the Cosmosphere's collection.  In an email, defendant admitted to Jeff Ollenburger that the DDR tape was NASA property.  As for the signal conditioner, NASA records and Cosmosphere's inventory sheet reflect that it is a NASA item. The evidence also established that both items were sold at auction.  There was no record indicating that defendant owned the signal conditioner or DDR tape.  The jury had the opportunity to weigh the evidence that defendant alleges supported acquittal.  In evaluating the evidence, the jury found that the first element of theft of government property – that being government ownership of the item – had been established. Based on the trial testimony and exhibits introduced, the jury could reasonably conclude that government property had been stolen as alleged in Counts 3 and 12.

**3. Counts 4, 8 and 13 Relating to Mail and Wire Fraud at Auction**

As to the mail and wire fraud charges, defendant argues that the government failed to show that defendant's statements were material and that there was insufficient evidence to find a scheme.  Defendant contends that the only misrepresentation introduced was a statement that artifacts being sold were being consigned on behalf of an astronaut's wife.  He also notes that he did not hide his name as the seller at the auction and disclosed such sales on deaccession sheets.

Again, the court finds sufficient evidence to uphold the jury verdict.  The record indicates that the government demonstrated material misrepresentations in the mail and wire fraud

5

schemes.  It is incorrect to imply that the only misrepresentation presented related to statements that artifacts were being sold on behalf of an astronaut's wife.  Rather, the jury could conclude that defendant made material representations in purporting to be the lawful owner of the items listed at auction.  Using his own name reduced suspicion that the auctioned items were not Mr. Ary's. The jury could also conclude that defendant deaccessed Cosmosphere and NASA property from its inventory so that it would appear that the deaccessed property belonged to Mr. Ary. These were all considerations that the jury weighed in evaluating the evidence.  Since there was sufficient evidence for the jury to find defendant's statements material and that a scheme to defraud existed, the jury's conclusions will stand.

**4. Count 17 Relating to the Interstate Transfer of Box 8, 9 and 10**

Finally, defendant disputes that there was sufficient evidence for the jury to find guilt beyond a reasonable doubt of interstate transportation of stolen property as charged in Count 17. Defendant argues that there was no evidence that Mr. Ary transported or caused to be transported goods in the boxes with the knowledge that the property had been obtained illegally.

Defendant's argument asks the court to reevaluate the credibility of the defendant.  The issue of credibility is soundly in the province of the jury.  Ditrich v. United States, 243 F.2d 729, 730 (10th Cir. 1957) (noting that it is the province of the jury "to observe the witnesses, to appraise their credibility, to weigh their testimony, to draw inferences from established facts, to resolve conflicts, and to determine the ultimate question whether the guilt of the accused has been established beyond a reasonable doubt.").  For the court to determine whether Mr. Ary knew and intended to transport the boxes across state lines necessarily would require the court to redecide defendant's intent.  The court declines to do so.  United States v. McKissick, 204 F.3d

6

1282, 1289 (10th Cir. 2000) (quoting <u>United States v. Pappert</u>, 112 F.3d 1073, 1077 [10th Cir. 1997]).  Based on the testimony and exhibits submitted on the record, the jury had a sufficient factual basis for reaching a conclusion as to whether defendant transported across state lines goods that were obtained illegally.  The jury's verdict should stand.

## III. NEW TRIAL

### A. Standard of Review

Federal Rule of Criminal Procedure 33 permits the court to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a); <u>United States v. Custodio</u>, 141 F.3d 965, 966 (10th Cir. 1998).  Courts view motions for new trial with disfavor and grant such motions with great caution. <u>United States v. Pearson</u>, 203 F.3d 1243, 1274 (10th Cir. 2000).  The defendant bears the burden of proving the necessity of a new trial.  <u>United States v. Walters</u>, 89 F. Supp.2d 1206, 1213 (D. Kan. 2000). "For purposes of this case, the relevant rule is that a new trial should be granted upon '[a]ny error of sufficient magnitude to require reversal on appeal.'" <u>Id.</u> (quoting 3 <u>Charles A. Wright, Federal Practice and Procedure</u> § 556 [1982]).  The decision of whether or not to grant a new trial is committed to the sound discretion of the district court. <u>See</u> <u>United States v. Patterson</u>, 41 F.3d 577, 579 (10th Cir.1994).

### B. Analysis

Defendant argues that a new trial should be granted because: 1) the variance between the indictment charging failure to relinquish insurance proceeds to NASA in Counts 1 and 2, and the evidence presented at trial was sufficient to constitute a prejudicial variance; 2) there was inadequate foundation to admit the Kansas Cosmosphere and Space Center (hereafter "KCSC") inventory; 3) the fairness of the trial was compromised by the prosecutor's closing arguments; 4)

the court erred in directing the jury to particular evidence; and 5) the cumulative effects of these errors warrant a new trial.

**1. Prejudicial Variance Between the Charging Indictment and Trial Evidence**

Defendant focuses attention on the fact that the Superseding Indictment alleged that the mock-up watch belonged to NASA and the insurance proceeds were not relinquished to NASA. Defendant alleges that the trial evidence varied from the charges, so in closing arguments, the government argued that the jury could also find Mr. Ary guilty if it found that he defrauded the insurance company.  Defendant alleges this shift constitutes prejudicial variance, or, in the alternative prosecutorial misconduct that warrants a new trial.

It is well settled "that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 217 (1960). "The law is clear that once an indictment has been returned, the charges may not be broadened through amendment unless done by the grand jury itself." United States v. Moore, 198 F.3d 793, 795 (10th Cir. 1999).

When the evidence at trial or the court's jury instructions deviate from what is alleged in the indictment, two distinct problems can arise – constructive amendment or variance. Id.  "'A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment.'" Id. (quoting United States v. Beeler, 587 F.2d 340, 342 [6th Cir. 1978]). A constructive amendment occurs when "the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." Hunter v. State of New Mexico, 916 F.2d 595, 599 (10th Cir. 1990).

"In order to rise to this [constructive amendment] level, the change in the indictment must be more than the addition or deletion of nonessential factual averments. Rather, the amendment must effectively alter the substance of the indictment." Id. When a constructive amendment occurs, the jury convicts the defendant on a factual basis that modifies an essential element of the offense. United States v. Wright, 932 F.2d 868, 874 (10th Cir. 1991).

In reviewing the Superseding Indictment, the court finds that defendant focuses too narrowly on ownership of the mock-up watch. The charging instrument not only includes allegations that the mock-up watch belonged to NASA but also that defendant misrepresented the value of the mock-up watch as being a flown watch on loan from NASA so as to secure insurance proceeds. Then, the Superseding Indictment alleged that defendant did not notify NASA about the loss of the watch, did not relinquish the insurance proceeds received, and continued to certify that the Omega mock-up watch was still in the Cosmosphere's collection. The charging instrument included a summary of the inconsistencies the government alleged as the basis for a jury to find a scheme to defraud.

Defendant notes that Chuck Biggs testified that NASA has not owned mock-up watches. He testified based on his experience. At the same time, Louis Parker, who signed the NASA loan agreement, testified that NASA loaned the Cosmosphere four Omega mock-up watches. Based on the verdict, the court would assume that the jury placed credence on the testimony of Mr. Parker. Also, evident from the verdict is that the jury members did not give credence to defendant's alternate theories that one mock-up watch was on loan to the Omniplex in Oklahoma or that there may be a fifth mock-up watch.

9

In light of the evidence on the record and a review of the charging instrument, the court

does not find prejudicial variance between the Superseding Indictment and the trial evidence.

## 2. Admission of KCSC Inventory Sheets

Next, defendant objects to the admission of the KCSC inventory sheets on the grounds of

lack of foundation.  Defendant contends that the records were not made at or near the time the

Cosmosphere acquired the items and that the information was not transmitted by a person with

knowledge.

Federal Rule of Evidence 803(6) permits the admission of business records as an

exception to the hearsay rule where the requirements of the rule are met. It provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events,
> conditions, opinions, or diagnoses, made at or near the time by, or from
> information transmitted by, a person with knowledge, if kept in the course of a
> regularly conducted business activity, and if it was the regular practice of that
> business activity to make the memorandum, report, record or data compilation, all
> as shown by the testimony of the custodian or other qualified witness, or by
> certification that complies with Rule 902(11), Rule 902(12), or a statute
> permitting certification, unless the source of information or the method or
> circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).  The term "business" includes institutions that are not for profit. Fed. R.

Evid. 803(6).  If the offeror establishes a sufficient foundation in the record, the business record

will be admitted.  United States v. Cestnik, 36 F.3d 904, 909 (10th Cir. 1994). While a "witness

may not testify to a matter unless evidence is introduced sufficient to support a finding that the

witness has personal knowledge of the matter," Fed.R.Evid. 602, "there is no requirement that

the party offering a business record produce the author of the item," FDIC v. Staudinger, 797

F.2d 908, 910 (10th Cir. 1986).  A person who demonstrates sufficient knowledge of the record-

keeping system that produced the document may establish foundation for the business record. Objections concerning the accuracy of business records go to its weight, not its admissibility.  Id.

The court finds that there was sufficient foundation for the admission of the KCSC inventory sheet.  As an employee responsible for collections and exhibits, Jim Remar was responsible for maintaining the Cosmosphere's inventory records. Through Mr. Remar's direct testimony, the government established sufficient foundation for the inventory sheets to be admitted. The defendant objected to the admission of these records on grounds similar to those raised here. The court overruled defendant's objection.  When the court asked the parties to reach an agreement on the admissibility of the remaining evidence, the parties reached a stipulation with defendant asking for a continuing objection.  The court noted the continuing objection for the record but permitted the admission of the Cosmosphere inventory sheets.  During cross-examination, defendant had an opportunity to uncover any deficiencies in the handling of the Cosmosphere's inventory sheets.  The jury had an opportunity to consider defendant's arguments and determine what weight to assign evidence.  The court will not disturb its earlier ruling on the admissibility of the inventory sheets.   The government had laid the foundation for the admission of the inventory sheets, and the jury had an opportunity to consider what weight to attach to the records.  Accordingly, the court denies defendant's objection.

**3. Prosecution's Closing Arguments**

Defendant asks for a new trial on the grounds that the prosecutor's closing arguments compromised the fairness of the trial.  Defense counsel accuses the AUSA of prosecutorial misconduct for:  1) making comments beyond the scope of the admitted evidence; 2) alleging that the Philippines loan agreement "required" a flown Omega watch when the loan agreement

11

was never introduced into evidence; 3) commenting that the contents of the boxes were "spread out all over the house" when "[t]here was no evidence presented the contents of those boxes were anywhere but sealed in the boxes labeled 8, 9 and 10;" 4) commenting on the defendant's failure to testify about the watch; and 5) characterizing the defendant's conduct as manipulative, deceitful, and fraudulent.

The court does not find evidence of prosecutorial misconduct. The government based its closing arguments on the evidence presented at trial. The evidence related to the Omega mock-up watch was based on testimony of several witnesses and documentary evidence. The testimony of defendant and his wife described the condition of the items in the three boxes and the manner in which Cosmosphere property had been handled within the house. The prosecution could also raise the issue of defendant's lack of explanation as to the Omega watches. Caminetti v. United States, 242 U.S.470, 493, 37 S.Ct. 192 (1917) (noting that a defendant's failure to deny or explain acts of an incrimination nature "may not only be commented upon, but may be considered by the jury with all the other circumstances in reaching their conclusion as to his guilt or innocence."). Finally, the prosecutor could characterize defendant's conduct as manipulative, deceitful and fraudulent because the description related to specific actions of the defendant that had been developed based on the extensive trial testimony and admitted records. The ultimate determination as to whether these characterizations were appropriate was in the hands of the jury. Defendant had adequate opportunity to respond to these characterizations through his own development of the record and witnesses' testimony. The court does not find a new trial necessary.

**4. Jury Questions as to Count 12**

Defendant argues that the court improperly directed the jury to certain exhibits pertaining to the signal conditioner in Count 12 because it subverts the principle that the jury's deliberation must remain inviolate as the exclusive factfinder.

The court has broad discretion in managing the jury deliberation, particularly when the jury encounters stumbling blocks. United States v. Ayeni, 374 F.3d 1313, 136(D.C. Cir. 2004). When the court received the first question relating to the signal conditioner, the court instructed the jurors to use their collective memory to determine the relevant exhibits. On the next day of deliberations, the jurors raised the same issue.  Because of the repeated question, the court determined it appropriate to provide the accession and deaccession exhibit numbers because of the jury's difficulty in locating the documents amongst the wealth of documents submitted into the record.  By providing the exhibit numbers, the court did not direct the jury to a particular conclusion but served an administrative role in helping jurors physically locate the exhibits that were already a part of the record. The court consulted both parties regarding how to proceed with this matter.  The court finds no prejudicial error.

**5. Cumulative Effects of Errors**

Defendant argues that the effect of numerous cumulative nonreversible errors warrants a new trial.  In making this argument, defendant asks the court to consider the errors alleged in this motion as well as prior motions regarding seizure of privileged material.

"Cumulative-error analysis applies where there are two or more actual errors.  It does not apply, however, to the cumulative effect of non-errors." Moore v. Gibson, 195 F.3d 1152, 1175 (10th Cir. 1999).  See Newsted v. Gibson, 158 F.3d 1085, 1097 (10th Cir. 1998) ("A non-error

and a non-prejudicial error do not cumulatively amount to prejudicial error."). After reviewing the arguments in defendant's present motion and having previously considered the seizure of allegedly privileged materials, the court finds no grounds for a new trial based on a theory of cumulative errors. Here, defendant has failed to prove any errors in the conduct of his trial. Any errors that may have existed were harmless. Therefore, the court denies defendant's motion.

## IV. FORFEITURE

Finally, defendant argues that he is entitled to a new trial or in the alternative, an order or remittitur as to the forfeiture verdict. The United States presented a motion to this court addressing the issue of double counting with the jury verdict. The government asked for a reduction of the jury verdict to correct for any double recovery because of the overlapping items in the fraud and money laundering counts. The court granted the motion. Therefore, the court denies as moot defendant's request for a new trial on grounds of forfeiture.

IT IS ACCORDINGLY ORDERED this 25th day of January 2006, that the court denies defendant's Motion for Judgment of Acquittal or New Trial (Dkt. No. 102).

s/ J. Thomas Marten

J. THOMAS MARTEN, JUDGE
