IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                Case No. 6:05-10053-JTM

MAX ARY,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on the Government's Amended Motion to Set Aside Final Order of Forfeiture (Dkt. 204) and movant Nancy Carlson's Motion for Return of Property (Dkt. 210).

### I. Background

Defendant Max Ary was the President and Chief Executive Officer of the Kansas Cosmosphere and Space Center (KCSC), a space museum in Hutchinson, Kansas. The Cosmosphere is home to a significant collection of space artifacts, including many that are on loan from the National Aeronautics and Space Administration (NASA). Ary resigned from the Cosmosphere in 2002 and moved to Oklahoma City.

After Ary left, museum personnel discovered that artifacts on loan from NASA were missing. Investigation revealed that some items had been sold at auction in California, although the museum never received payment for them. In or around 1999, Ary had established two accounts with the auction house, one of which was in the Cosmosphere's name and was used to sell items on its behalf. The other was a personal

account in Ary's name. When the Cosmosphere contacted the auction house, it learned that some of the missing items had been sold through Ary's personal account and the proceeds had been mailed to him rather than to the Cosmosphere. An investigation ultimately showed that, over the course of several years, Ary had sold numerous artifacts belonging to the Cosmosphere and to the United States. A search of Ary's residence turned up numerous additional artifacts from NASA, and Ary's attorney turned over still more items that had been in Ary's possession.

Ary was indicted on April 6, 2005 (Dkt. 1), and was subsequently convicted by a jury on multiple counts of mail and wire fraud, theft of government property, transportation of stolen property, and money laundering. The court sentenced him to 36 months imprisonment, imposed restitution of $132,374.50, and ordered criminal forfeiture of $124,140. Judgment was initially entered on June 2, 2006 (Dkt. 128), and after additional restitution proceedings, an amended judgment was filed on September 13, 2006 (Dkt. 143). Ary appealed to the Tenth Circuit, which affirmed the judgment on March 4, 2008. Dkt. 174.

Over three years later, in May of 2011, the United States moved for an order authorizing the FBI to turn over property that was seized from Ary to the U.S. Marshal for advertisement and sale, with the proceeds to be applied to the outstanding restitution balance. Dkt. 175. An attachment listed thirty items, including one (Number 28) identified as "One white zippered 'LUNAR SAMPLE RETURN' bag, P/N V36-788034, S/N 06362AAJ1885." Dkt. 175-1 at 3. The motion asserted that the items would have been non-exempt property subject to a writ of execution had they still been in

2

Ary's possession. The United States certified that it served Ary with a copy of the motion. Dkt. 176. On May 19, 2011, the court approved an order for sale. Dkt. 177.

Almost two years later, on March 5, 2013, the United States filed a motion to amend or correct the previous order (Dkt. 177) so that the property "can be forfeited as substitute assets and further, so that the United States Marshal's Service can utilize its resources and procedures pursuant to its forfeiture authority to sell the subject property." Dkt. 178. The motion explained that this would allow the Marshal to use contractors to place the items in specialty auctions, which was desirable due to the items' unique nature. Dkt. 178 at 2. An attachment identified the same items as before, including the Lunar Sample Return bag. The court granted the motion, declaring that the items listed are "hereby forfeited to the United States as substitute assets pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1)." Dkt. 179 at 1. The order required the United States to publish notice of the order and of its intent to dispose of the property. *Id*.

On April 22, 2014, the United States filed a motion for final forfeiture of the property, asserting that it had published notice for thirty consecutive days on an official government website, www.forfeiture.gov, and that no claims to the property had been filed. Dkt. 198. The court granted the motion, entering a final order of forfeiture on April 23, 2014. Dkt. 199. The published notice, motion, and final order of forfeiture all identified the Lunar Sample Return bag in the same fashion as before. The court's order provided that "all right, title and interest to the property described below is hereby

condemned, forfeited to, and vested in the United States of America, and shall be disposed of according to law." *Id*. at 3.

**II. Motion to Set Aside Forfeiture**.

Over two years later, on August 3, 2016, the United States filed a "Motion to Set Aside Final Order of Forfeiture and Rescind Sale of Lunar Bag." Dkt. 200. An amended version of the motion was filed a few weeks later. Dkt. 204. In a nutshell, the Government alleges that due to a mix up in inventory lists and item numbers, the Lunar Sample Return bag that was the subject of the April 2014 forfeiture order was mistakenly thought to be a different bag. It alleges that no one, including the United States, realized at the time of forfeiture that this bag was used on Apollo 11 and was an historically important item. It further alleges that NASA was the owner of the bag but was not given notice of the forfeiture or the sale of the bag.

The confusion apparently stemmed from the fact that two NASA lunar bags were part of the Cosmosphere collection, and the identifying numbers of the two bags became mixed up at some point during the Ary investigation and prosecution. According to the government, after Ary's actions came to light, the Cosmosphere made a list of missing items. Based on that list, Special Agent Michael C. Mataya of NASA's Office of Inspector General submitted a search warrant application that included an attachment identifying missing and/or stolen items. Dkt. 38. One of the items was identified as "KCSC 2268, Flown Lunar Sample Return Bag, Part Number V-36788034."

The attachment further stated that this bag was "Sold at Superior Auction May 2001 by ARY367." Dkt. 38 at 27.[1]

In fact, the Lunar Sample Return bag, although accurately described in the application by inventory and part numbers, had not been sold by Ary at the 2001 auction. Rather, that bag was among the items found in Ary's garage upon execution of the search warrant. Ary had sold a NASA bag at the 2001 auction, but it was a Lunar Sample *Containment* bag. According to an auction catalogue, the Containment bag had been flown to the lunar surface as part of the Apollo 17 mission and was auctioned in 2001 to Rich Cigel for $24,150. The Government recovered the Containment bag from Cigel prior to trial and returned it to the Cosmosphere. That bag was referenced at trial and was referred to by its correct Cosmosphere inventory number, KCSC 2249. DKt. 162 at 167. At sentencing, Ary was ordered to pay restitution to Cigel to reimburse him for his purchase of the Containment bag. But neither the Containment bag nor its inventory number (KCSC 2249) ever appeared on the lists of missing items provided to investigators by the Cosmosphere. Rather, the bag sold at the 2001 auction was erroneously identified in various documents as "KCSC 2268" – the number of the Lunar Sample Return bag found in Ary's garage and still (as of sentencing) in the possession of the FBI.

---

[1] "KCSC 2268" was a Cosmosphere inventory number unique to this item. ARY367 was Ary's personal account with the auction house. The Part Number was a NASA identifier for this type of part (i.e., for a lunar sample return bag), but was not unique. The bag had a unique serial number that was displayed on a tag inside the bag, but the serial number was not listed on the warrant attachment, despite the fact that the attachment had a column for serial numbers and some parts were so identified. Dkt. 38 at 27. The attachment also indicated the bag had been acquired by the Cosmosphere in September of 1981 and that it was "transferred from NASM," presumably referring to the National Air and Space Museum. *Id*.

As noted, when the United States sought authority in 2011 to turn over the items in its possession to the U.S. Marshals for sale, and again in 2013 when it obtained an order declaring these items forfeited, it listed the Lunar Sample Return bag (KCSC 2268) among the items to be sold. Dkt. 175-1 at 3. The U.S. Marshal contracted with the firm of Gaston and Sheehan in Pflugerville, Texas, to conduct an online auction to sell these forfeited items. The bag was described for auction as a "*flown zippered lunar sample return bag with lunar dust. 11.5" Tear at center. Flown Mission Unknown.*" The Government represents that this description was supplied by an independent appraiser, who obtained the data from "various sources," including the Cosmosphere. The bag was not sold at the initial auction on October 14, 2014, because no bids for it were received.

In February 2015, a second online auction was held. Nancy Carlson was the successful high bidder for the Lunar Sample Return bag, which sold together with a mesh cushion for a total bid of $995. The bag was shipped to Carlson in Inverness, Illinois. On August 21, 2015, Carlson spoke by phone with Dr. Ryan Zeigler, NASA's Apollo Lunar Sample Curator at the Johnson Space Center in Houston. Zeigler told Carlson that if she sent him the bag, he could determine if it contained lunar material. She did so, and on December 28, 2015, an initial analysis indicated that dust from the bag was lunar.

The Government asserts that after additional research, NASA determined on April 6, 2016, that the Lunar Sample Return bag had flown on Apollo 11 in July 1969, the first manned mission to the moon, and that it was used as the outer decontamination bag for the first lunar samples ever collected. It determined that

fragments in the bag were lunar and that lunar material was intrinsically mixed with the fabric of the bag. The Government contends that at that point, "NASA [first] learned [that] an Apollo lunar bag containing lunar material had been sold at the government auction, without notice to or permission from NASA." Dkt. 204 at 6. The government contends that NASA owned the bag and the lunar material and never transferred ownership of these items; that NASA loaned the bag to the Cosmosphere pursuant to an agreement; that NASA's policy and practice is not to transfer ownership of lunar material to any private individual; and that "NASA would have asserted its ownership in the Apollo 11 bag had the agency been properly been notified about the forfeiture and had the bag been accurately identified before it was forfeited and sold." *Id.* at 7.[2]

### III. Summary of Arguments

The Government moves to set aside the forfeiture and rescind the sale of the bag because: 1) "notice of the forfeiture of the substitute assets … was not sent to NASA"; 2) extraordinary circumstances warrant relief under Rule 60(b)(6); 3) the bag's scientific, historical, and cultural importance warrant relief, given the mistake in identification of the bag; and 4) NASA has statutory ownership of the bag and the lunar material and did not knowingly relinquish or abandon ownership. Dkt. 204. The Government asks the court to set aside the forfeiture, rescind the sale to Nancy Carlson, and direct the

---

[2] Ms. Carlson argues among other things that NASA's refusal to return the bag to her was an improper seizure of her property. She made the same argument in *Carlson v. Bolden, et al.*, No. 16-cv-01367 (D. Kan.), a civil suit initially filed in Illinois, later transferred to this court, and eventually voluntarily dismissed by Carlson. In the court's view, the fact that NASA retained the bag after the dispute arose is essentially irrelevant to the Government's motion to rescind the sale.

U.S. Marshals to refund the bag's $995 purchase price (plus $33.53 for shipping) to Carlson.

In response, Carlson contends that a motion is not a proper vehicle for rescission of the bag's sale and, in any event, the Government has shown no grounds for setting aside the forfeiture or the sale. Dkt. 208. She argues the United States had all the material facts in its possession throughout the case and that NASA was heavily involved from the beginning. She asserts that the Government only claims NASA did not have "formal notice" of the forfeiture, and argues this is because NASA had actual notice, which she argues is sufficient reason to deny the motion. Dkt. 208 at 10 (*citing* Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions). Moreover, Carlson argues the court cannot "reach beyond its prior order and outright cancel a subsequent and completed sale." *Id.* at 11. She maintains that title to the bag was vested in the United States – whether by virtue of NASA's ownership of it or because the bag was forfeited – and that the United States passed valid title to her through the sale. She contends the Government should be treated the same as a private party and should not be allowed to back out of a completed sale, particularly when "[e]veryone here knew the nature of the item for sale – a flown lunar sample collection bag containing lunar dust." *Id.* at 12. She notes that lunar dust is not contraband and is not illegal to own. Even if the court has the power to set aside the forfeiture, she argues the equities here do not favor it.

In reply, the Government asserts that because the forfeiture took place over seven years after sentencing, NASA had long since ended its active involvement in the

case. It represents that NASA "was not provided notice that the United States was seeking forfeiture of these items as substitute assets of the defendant." Dkt. 209 at 4. As such, NASA "had no reason to know [the bag] was being transferred out of FBI's custody to the USMS," and had "no opportunity to assert an ownership interest in any of the items." *Id*. The Government disputes movant's suggestion that the bag could have been readily identified, pointing out that the bag's part number was not unique, and that the Apollo 11 stowage list of items flown did not identify the bag by its serial number. The Government contends that general principles of equity favor NASA because NASA did nothing wrong; Ms. Carlson "can be restored to the same condition she was in prior to purchasing the bag" but "the lunar bag can never be replicated or replaced"; Ms. Carlson will only be deprived "of the windfall profit she hoped to make from selling the bag (as she has declared she will do)"; and "NASA's interest benefits society as a whole." Dkt. 209 at 12.

**IV. Discussion**

The Government's motion for relief is premised on the catch-all provision of Fed. R. Civ. P. 60(b)(6). Relief under this provision is considered extraordinary and may only be granted in exceptional circumstances. *Davis v. Kan. Dept. of Corr.*, 507 F.3d 1246, 1248 (10th Cir. 2007). Such relief "is difficult to attain and is appropriate only when it offends justice to deny such relief." *Id*.

The record strongly suggests that the forfeiture of the Lunar Sample Return bag was a product of mistake or error. It also suggests that the legal owner of the bag prior to forfeiture was NASA, not Ary, and that NASA was not given and did not receive

actual notice of the forfeiture.[3] Nor is there any indication that NASA ever consented to the sale of the bag. The United States offers a plausible explanation indicating that this was due to NASA having ended its involvement in the case several years before forfeiture. NASA appears to have had no knowledge that the bag was being forfeited or sold, as the United States' representative failed to realize NASA's ownership or give NASA actual notice of the forfeiture. Assuming such circumstances could be shown by competent evidence at a hearing, Rule 60 of the Federal Rules of Civil Procedure would likely authorize relief from the judgment of forfeiture under subsection (b)(6). Although Ms. Carlson argues that NASA should be treated like any other person, and should be held to have received notice because other federal agencies or representatives knew of the forfeiture (and indeed were directing it), or because notice was published on a government website, case law suggests the notice was constitutionally deficient. First, where there is an ascertainable owner of property whose whereabouts are known, due process in the context of judicial forfeiture requires notice that is reasonably calculated to reach the owner. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950) ("The statutory notice to known beneficiaries is inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand."). The United States knew or should have known of NASA's ownership interest and could have easily provided it with actual notice of the forfeiture. Under the circumstances,

---

[3] Ms. Carlson has submitted an affidavit from a former special agent of NASA's inspector general's office, which includes an opinion that NASA agents likely reviewed all of the items that were seized and cleared items for eventual relinquishment to the Marshal's Service. Dkt. 208-2. The court agrees with the Government that the affidavit is based on speculation and should not be considered.

publication on a government website was an inadequate means of notice. *See also* Fed. R. Crim. P. 32.2(b)(6) ("the government must … send notice to any person who reasonably appears to be a potential claimant with standing").  Second, case law generally provides that notice or actual knowledge of one United States governmental agency will not be imputed to another agency. *See, e.g., United States Small Business Admin. v. Bridges*, 894 F.2d 108, 112 (5th Cir. 1990). Thus, the fact that federal agencies such as the FBI or the U.S. Marshal's Service were aware of the forfeiture is not constructively imputed to NASA, nor can the knowledge of the U.S. Attorney seeking the forfeiture be attributed to a federal agency that was not involved in the forfeiture. In sum, absent the sale of the bag, the court would have little difficulty in concluding that circumstances warranted setting aside the judgment of forfeiture of the Lunar Sample Return bag. *See also* 18 U.S.C. § 983(e) (person not receiving written notice of forfeiture despite government's knowledge of the interest has five years to move to set aside forfeiture declaration).

But an additional hurdle to the Government's motion – and one that appears insurmountable - is a showing that the court has authority to rescind the subsequent sale of the bag to Ms. Carlson. Although the Government cites cases where federal courts have applied Rule 60 to vacate or amend forfeiture orders in criminal cases, including where inadequate notice was provided to a property owner, it cites no instance of a court ordering rescission of a sale to a bona fide purchaser after a final order of forfeiture.

The Government makes no suggestion that Ms. Carlson is anything other than a bona fide purchaser. No allegation is made or evidence cited that she had any connection to defendant Ary or had any reason to suspect that the United States did not have title to the bag or that NASA had an equitable claim to it. She provided present value in exchange for the bag. She thus appears to qualify as a bona fide purchaser. And the Government cites no express condition of the sale to Ms. Carlson that would allow the court to set aside the sale after the fact.

The court finds no authority declaring the rights or priority of an interest owner whose property was wrongfully forfeited versus those of a subsequent bona fide purchaser of the property. By analogy, other authority suggests that a bond fide purchaser would likely prevail. For example, under the criminal forfeiture provisions of Title 21, all right, title and interest in a defendant's forfeitable property is said to vest in the United States upon commission of the criminal act giving rise to forfeiture. 18 U.S.C. § 853(c). Any such property that is thereafter transferred to a person other than the defendant shall be ordered forfeited to the United States, *unless the transferee establishes that he is a bona fide purchaser*. *Id*. Similarly, after an order of forfeiture, if a petitioner establishes that he is a bona fide purchaser who had no cause to believe the property was subject to forfeiture, the court is to amend the order of forfeiture in accordance with its determination. 21 U.S.C. § 853(n)(6).

These provisions indicate (albeit indirectly) that Ms. Carlson's interest as a bona fide purchaser takes priority over any interest the United States may have acquired through forfeiture. They do not directly address the interest or priority of a property

12

owner such as NASA, whose property was apparently forfeited without adequate notice. But other provisions suggest that Ms. Carlson's standing as a bona fide purchaser gives her priority over NASA's asserted claim to the property. By statute, the interest of a former owner is declared to be extinguished upon forfeiture, as the lack of a timely petition in the forfeiture proceeding means that "the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." 21 U.S.C. § 853(n)(6). Under this provision, legal title to the bag passed to the United States. Title was subsequently conveyed to Ms. Carlson upon completion of the auction sale. *See, e.g.*, K.S.A. § 84-2-328(2) (sale by auction is complete when auctioneer so announces by customary manner); K.S.A. § 84-2-401 (unless otherwise agreed, title passes to buyer upon seller's delivery of goods). To the extent the seizure and forfeiture was a wrongful taking of NASA's property without notice, NASA may be entitled to compensation from the United States for the taking. *See In re One Star Class Sloop Sailboat*, 517 F.Supp.2d 546, 555 (D. Mass. 2007) ("In a forfeiture proceeding, the claimant may obtain the return of the res by demonstrating that it was wrongfully seized. [cite omitted] When the government has sold the res in the interim, the proceeds [of the sale] constitute the substitute res that is returned to the claimant."). But the Government cites no authority showing that legal title to the bag did not pass to Ms. Carlson.

The Government requests rescission of the sale, an equitable remedy, to restore the bag to NASA. The standards governing equitable remedies, however, support the view that Ms. Carlson took the lunar bag free of any equitable claims to it that NASA

might assert. Under the *Restatement (Third) of Restitution and Unjust Enrichment* (2011), a transfer of property by an agent, trustee or other fiduciary outside the scope of the transferor's authority, or otherwise in breach of a duty to the principal, is subject to rescission and restitution. *Id.* § 17. The transferee in such a case is liable in restitution to the principal as necessary to avoid unjust enrichment. *Id.* This means an equitable remedy is available when legal title to a claimant's property is transferred by an agent outside the scope of the agent's authority, to a transferee who lacks an affirmative defense. *Id.* cmt. a. But a transferee who qualifies as a bona fide purchaser has an affirmative defense to such a claim: "A purchaser for value and without notice acquires the legal interest that the grantor holds and purports to convey, free of equitable interests that a restitution claimant might have asserted against the property in the hands of the grantor." *Id.* § 66.  *See also Id.*, § 17 cmt. d (rescission available against a purchaser for value "if the transferee took the property with notice of the transferor's breach of duty.").

In sum, the court simply finds no authority for granting the relief sought by the United States. The United States obtained title to the bag and sold it to Ms. Carlson, a good faith purchaser, in a sale conducted according to law. She is entitled to possession of the bag. In arguing that the equities favor return of the bag to NASA, the United States accurately points out that NASA was a victim in this case, not a wrongdoer, and that various other equities also favor NASA. Not the least of these is the fact that the importance and desirability of the bag stems solely and directly from the efforts of the men and women of NASA, whose amazing technical achievements, skill and courage in

landing astronauts on the moon and returning them safely have not been replicated in the almost half a century since the Apollo 11 landing. Perhaps that fact, when reconsidered by the parties, will allow them to amicably resolve the dispute in a way that recognizes both of their legitimate interests, including Ms. Carlson's legitimately acquired interest in the bag.

### V. Motion for Return of Property (Dkt. 210).

Ms. Carlson moves for return of the bag pursuant to Fed. R. Crim. P. 41(g). According to the briefs, the bag was seized by NASA in Texas. As movant recognizes in her motion, Rule 41(g) requires that the motion "must be filed in the district where the property was seized." *Id*. This court is accordingly without authority to grant such a motion.

**IT IS THEREFORE ORDERED** this 14th day of December, 2016, that the United States' Motion and Amended Motion to Set Aside Forfeiture and Rescind Sale of Lunar Bag (Dkts. 200, 204), and Movant Nancy Carlson's Motion for Return of Property (Dkt. 210), are DENIED.

_____s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE